UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Board of Education of the City School District
of the City of New York,
                  Plaintiff,

- against -

Richard P. Mills, as Commissioner of the New York
State Department of Education, and W.S., on
behalf of her minor child M.S.,
                  Defendants.

03 Civ. 0050 (RCC)

OPINION & ORDER

**RICHARD CONWAY CASEY, United States District Judge:**

      Plaintiff Board of Education of the City School District of the City of New York brings this suit against Defendant W.S., on behalf of her minor child M.S., pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"), to contest a State Review Officer's decision to award W.S. tuition reimbursement for the 2000-2001 school year. Plaintiff has discontinued its action against Defendant Richard Mills. Both parties now move for summary judgment. For the reasons explained below, the Board's motion for summary judgment is granted and Defendant's motion for summary judgment is denied.

**I.    Background**
      **A. IDEA**
      The IDEA offers federal funds to states that develop plans to provide "all children with disabilities" a "free appropriate public education." 20 U.S.C. § 1412(a)(1)(A). To meet the IDEA's requirements, a school district must provide a disabled student with "special education and related services" designed to serve the student's needs. 20 U.S.C. § 1401(8); Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 379 (2d Cir. 2003). School districts are to administer the disabled student's services through annual "individualized education programs" ("IEPs"). 20 U.S.C. § 1414(d); Grim, 346 F.3d at 379. New York receives federal IDEA funds and assigns responsibility for developing IEPs to local Committees on Special Education ("CSE"). See N.Y. Educ. Law § 4402(1)(b)(1) (McKinney 2001).

      "New York parents who believe an IEP is insufficient under the IDEA may challenge it in an 'impartial due process hearing,' see 20 U.S.C. § 1415(f), before an [Impartial Hearing Officer] appointed by the local board of education, see N.Y. Educ. L. § 4404(1)." Grim, 246 F.3d at 379. "At this hearing and throughout the subsequent administrative and judicial appeals process, the school district bears the burden of proving by a preponderance of the evidence that: (1) it complied with the IDEA procedural requirements; and (2) the IEP is 'reasonably calculated' to confer 'educational benefits' on the students." J.R. v. Bd. of Educ. of the City of Rye Sch. Dist., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004) (quoting Bd of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982)). The Impartial Hearing Officer's decision may be appealed to a [State Review

Officer], see N.Y. Educ. L. § 4404(2) (McKinney 2001); 20 U.S.C. § 1415(g), whose decision may be challenged in either state or federal court, see 20 U.S.C. § 1415(i)(2)(A).

**B. M.S.'s 2000-2001 IEP**

Both while her family was living in New Jersey and after they moved to New York City in 1998, Defendant placed M.S. in Stephen Gaynor School, a New York City private school "totally for children [with] learning disabilities." Def. Resp. to Pltf. 56.1 Stmt. ¶¶ 3, 4. After W.S.'s family had established New York City residency, W.S. referred M.S. to Plaintiff's CSE. Id. ¶ 5. On July 14, 1999, as required by the IDEA, the CSE issued an IEP for M.S. Id. ¶ 9; see also 1999-2000 IEP at Botta Decl. Ex. B. M.S.'s 1999-2000 IEP "classified [him] as learning disabled and recommended General Education with Supplementary Aided Services and Supplemental Instructional Services with counseling and speech and language therapy." Def. Resp. to Pltf. 56.1 Stmt. ¶ 9. W.S. did not place M.S. in a New York City public school at that time.

Before the CSE reviewed M.S.'s needs for the school year at issue in this case, Defendant paid a deposit to re-enroll M.S. at the Stephen Gaynor School. Id. ¶ 6. On May 31, 2000, the CSE met to prepare M.S.'s IEP for the 2000-01 school year. Id. ¶ 15. The CSE consisted of W.S., a district representative, a general education teacher, a school psychologist, an education evaluator/special education teacher, and the head teacher from the Stephen Gaynor School. Id. ¶ 21; Pltf. 56.1 ¶ 24. The parties agree that a parent member did not participate in that meeting because "[o]ne was not available." Def. 56.1 Stmt. ¶ 4. There is some dispute as to whether the CSE asked W.S. to waive the parent member's presence or if she waived the parent member's presence on her own. Id. ¶12; see also id. ¶ 10 ("W.S. testified that she asked the team that if she did not agree to go forward, would they have to do it another day, and that the team responded yes, and at that moment she felt awkward."); Pltf. Resp. to Def. 56.1 Stmt. ¶¶ 11, 12; see also Impartial Hearing Tr. at 139, at Botta Decl. Ex. C (W.S. testifying: "I figured I was a big shot. I could do this. I could do this."). Nevertheless, W.S. did waive the presence of a parent member and the CSE reviewed M.S.'s case on May 31. See Botta Decl. Ex. B at 61 (handwritten note by W.S. stating: "The parent member can help to explain and interpret at the meeting. I am willing to continue without his presence. [W.S.]").

W.S. could have met with a Placement Officer to discuss M.S.'s placement in a special education program at the completion of the May 31 meeting, but she chose instead to schedule the meeting after she had received and reviewed the IEP. Def. 56.1 ¶ 18. The 2000-01 IEP for M.S. classified him as learning disabled and recommended a program of a Special Class and Modified Instructional Services I with a staffing ratio of fifteen students assigned to one teacher. Def. Resp. to Pltf. 56.1 Stmt. ¶ 22. The CSE also recommended small group counseling, language and speech therapy, and participation in certain school activities with non-disabled students. Id. ¶ 23.

On June 27, 2000 the CSE recommended placement at Public School 167, located at 220 East 76th Street in New York City. Id. ¶ 26. Defendant wrote to the CSE Placement Officer on July 5 and July 24, 2000 to request information about the class profile for M.S.'s recommended

placement. Def. 56.1 ¶¶ 21, 22. The Placement Officer informed W.S. on August 1, 2000 that the information she requested would not be available until class registers were finalized the first week in September. Id. ¶ 23. On August 14, 2000, Defendant wrote to the CSE chairperson and stated that she believed she had no choice but to enroll her son in Stephen Gaynor School because the information she had requested was not available. Id. ¶ 25. At the same time, she informed Plaintiff that she would be requesting an impartial hearing. Id.

On August 17, 2000, the Plaintiff Board of Education informed W.S. that because she requested an impartial hearing, the class profile information would be provided to her counsel during the course of the hearing. Id. ¶ 26. In her response on August 30, 2000, W.S. informed the CSE that the fact that she requested an impartial hearing did not mean that she no longer wanted the information about the recommended class. Id. ¶ 27. The Board of Education did not respond to Defendant's August 30 letter. Id. ¶ 28.

The impartial hearing regarding M.S.'s 2000-01 IEP was held on April 30, 2001 and June 21, 2001. Id. ¶¶ 57, 58. M.S.'s teacher from Stephen Gaynor School testified that M.S. had "intensive difficulties with receptive and expressive language;" that "abstract or inferential thinking is difficult for him;" and that he had "difficulty with social pragmatic skills and reading social skills." Id. ¶¶ 45-47. She testified that M.S. "was socially immature and that he required a small restricted and structured environment . . . to focus." Id. ¶ 43. At Stephen Gaynor, M.S. was in a class of eight students and his teacher testified that a larger group would "throw him off." Id. ¶¶ 39, 48. W.S. testified that M.S. was in the sixth grade during the 2000-01 school year and she could not understand why the IEP recommended a seventh grade class for that year. Impartial Hearing Tr. at 149, at Botta Decl. Ex. C. She also argued that the CSE did not adequately take into account M.S.'s speech and language needs. Id. at 166.

On August 23, 2001, the Impartial Hearing Officer made her findings of fact. She found that while M.S. had had success in a small class setting of eight students, "there is no basis on which I could find that he could not meet with equal success in a larger class of 15 students or that he is unable to function in a larger school." IHO Aug. 23, 2001 Decision at 9, at Botta Decl. Ex. D (hereinafter "IHO Decision"); see also id. at 10 (finding W.S. knowingly waived the presence of the parent member at the CSE meeting). Accordingly, the Impartial Hearing Officer denied W.S.'s request for tuition reimbursement for the 2000-01 school year. Id. at 10.

Defendant appealed that decision to a State Review Officer. Def. 56.1 ¶ 60. The State Review Officer held that the 2000-01 IEP was a nullity because it was created by an improperly formed CSE. State Review Officer Sept. 2, 2002 Decision at 4-5, at Botta Decl. Ex. A (hereinafter "SRO Decision"). The Officer found there was a question as to "whether the participation of the parent member was a right that a student's parent may waive, or whether the parent member's participation was mandatory unless the parent affirmatively requested that the mandatory parent member not participate." Id. at 4. In light of his determination, the State Review Officer did not find it necessary to address the other issue raised by W.S. – the inappropriateness of the program recommended by Plaintiff. The State Review Officer did find that the Stephen Gaynor School was an appropriate placement for M.S. and that equitable

3

considerations supported reimbursing Defendant for tuition expenses for the 2000-01 school year. Id. at 6. The Board appeals that decision here.

## II. Discussion
### A. Standard for IEP Review

The IDEA "expresses a strong preference for children with disabilities to be educated, 'to the maximum extent appropriate,' together with their non-disabled peers." Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998) (quoting 20 U.S.C. § 1412(a)(5)(A)). A child should be segregated "only 'when the nature or severity' of a child's disability is such 'that education in regular classes with the use of supplementary aids and service cannot be achieved satisfactorily.'" Id. (quoting 20 U.S.C. § 1412(a)(5)(A)). Parents of a disabled child who previously received special education from a public school district may seek tuition reimbursement for a unilateral placement in a private school when the school district fails to offer their child a free and appropriate public education. See 20 U.S.C. § 1412(a)(10)(C)(ii); Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 13 (1993).

In reviewing a challenged IEP, this Court must determine whether the state complied with the procedural requirements of IDEA and whether the challenged IEP was "reasonably calculated to enable the child to receive educational benefits." Walczak, 142 F.3d at 129; see also Rowley, 458 U.S. at 206-07; Grim, 346 F.3d at 381. This Court is to base its decision on the "'preponderance of the evidence' taking into account not only the record from the administrative proceedings, but also any further evidence presented by . . . the parties." Grim, 346 F.3d at 380 (quoting 20 U.S.C. § 1415(i)(2)(B)). The Supreme Court and Second Circuit have instructed that the IDEA strictly limits "judicial review of state administrative decisions." Id. at 381 (citing Rowley, 458 U.S. at 204-08; Walczak, 142 F.3d at 129). "While federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to those proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve 'persistent and difficult questions of educational policy.'" Walczak, 142 F.3d at 129 (quoting Bd. of Educ. v. Rowley, 458 U.S. at 205). When it comes to matters of statutory interpretation, however, "state administrative officials [are] in no better position than the district court to make conclusions." Bd. of Educ. of the City Sch. Dist. of the City of New York v. Tom F., No. 01 Civ. 6845 (GBD), 2005 WL 22866, at *2 (S.D.N.Y. Jan. 4, 2005) (holding, after de novo review, that IDEA precludes tuition reimbursement where student had never received special education from public agency); see also Carmel Cent. Sch. Dist. v. V.P., No. 04 Civ. 3320 (CM), 2005 WL 1469472, at *4 (S.D.N.Y. June 9, 2005) ("[A]n SRO's determination of a pure question of law is not subject to deference.").

### B. The Board of Education Complied with IDEA Procedural Requirements

The State Review Officer found that the 2000-01 IEP was procedurally deficient. He held that the CSE comprised for M.S.'s 2000-01 IEP was a "nullity" because it did not include a parent member. SRO Decision at 3, 5. Based on the language of the New York statute, the Review Officer found that the "parent member's participation is mandatory unless the student's parent affirmatively requests that the additional parent member not participate." Id. at 4. Because the CSE did not include a parent member, in the Review Officer's view, the Board of

Education "did not meet its burden of establishing that it had offered to provide an appropriate educational placement . . . for the 2000-01 school year." Id. at 5 (internal citation omitted).

This Court's "procedural inquiry is no mere formality." Walczak, 142 F.3d at 129. The IDEA emphasizes "full participation of concerned parties throughout the development of the IEP." Id. (internal citations omitted). Full participation, along with "federal approval of state and local plans, reflects a 'conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.'" Id. (quoting Rowley, 458 U.S. at 206). The IDEA, however, does not require the participation of a parent member on a child's IEP team. See 34 C.F.R. § 300.344 (stating the IEP team shall include the child's parents; a special education teacher; a regular education teacher; a representative of the Board; an individual, who may be a member of the team in another capacity, who can interpret the implications of evaluation results; and at the discretion of the parent or agency, other individuals who have knowledge or expertise regarding the child). New York includes the parent member in the CSE membership, but provide that "such parent is not a required member if the parents of the student request that the additional parent member not participate in the meeting." N.Y. Educ. Law § 4402(b)(1)(a) (McKinney 2001); see also 8 N.Y.C.R.R. § 200.3(a)(1)(viii). New York Education Law was amended on July 20, 1999 to add the language permitting a disabled student's parent to waive the participation of a parent member in the CSE.

The State Review Officer acknowledged that the "hearing officer found that [W.S] had knowingly waived the presence of the parent member at the meeting" and noted he "would be reluctant to substitute [his] own judgment for hers if it were solely a question of witness credibility." SRO Decision at 4. Yet, in turning the issue from one of witness credibility into one of statutory construction, the State Review Officer relied on decisions concerning CSE membership prior to the July 20, 1999 amendment permitting parents to waive the participation of a parent member. Id. (citing Application of a Child with a Disability, Appeal No. 99-27, at Baum Decl. Ex. F (concerning CSE for 1996-97 school year) and Application of a Child with a Disability, Appeal No. 97-1, at Baum Decl. Ex. E (noting that in 1997 section 4402(1)(b)(1) of the Education Law authorized parents to waive the presence of the school physician, but not the parent member).

The IDEA does not require the presence of a parent member and the parent member's absence cannot, therefore, be considered a procedural defect under the federal statute. Further, there is no question that W.S. waived the presence of the parent member prior to the commencement of the CSE's review on May 31. See Botta Decl. Ex. B at 61 (W.S.'s handwritten note acknowledging that she understood role of parent member and agreed to waive his participation in May 31, 2000 CSE). Further, unlike at the time of the two decisions cited by the State Review Officer, New York law provides that the parent of a disabled student with the opportunity to waive a parent member's participation in the CSE. See N.Y. Educ. Law § 4402(b)(1)(a) (McKinney 2001); see also 8 N.Y.C.R.R. § 200.3(a)(1)(viii). Further, there is no indication that the parent member's absence resulted in a loss of educational opportunity for M.S. or infringed on W.S.'s ability to participate in the CSE. The Court's conclusion on this point is

5

buttressed by W.S.'s own admission that the fact that a parent member was not present at the CSE review on May 31, 2000 is "not the dispositive issue in this case." Impartial Hearing Tr. at 166, at Botta Decl. Ex. C. Accordingly, the Court finds there was no procedural defect in the CSE and upholds the impartial hearing officer's finding that W.S. knowingly and effectively waived the presence of a parent member.

**C. The IEP was Appropriate**

The second step in this Court's review of the IEP is to determine if it was "reasonably calculated to enable [M.S.] to receive educational benefits." Walczak, 142 F.3d at 129; see also Rowley, 458 U.S. at 206-07. For the Court to conduct an "'independent' review of the sufficiency of an IEP . . . that does not 'impermissibly meddl[e] in state educational methodology,' it must examine the record for 'any objective evidence indicating whether the child is likely to make progress or regress under the proposed plan.'" Grim, 346 F.3d at 383 (quoting Walczak, 142 F.3d at 130)). W.S. contends the IEP was inappropriate because it assigned him to a class of fifteen students with skills ranging three grade levels. Additionally, because the specific class register was unavailable before September, W.S. could not compare the needs of M.S. with the needs of the other children in the classroom. The Impartial Hearing Officer reviewing the 2000-2001 IEP for M.S. concluded that "the Board of Education has acknowledged his areas of weakness and has offered a program that I find is appropriate to address his academic deficits." IHO Decision at 9. The State Review Officer did not address the content of the IEP.

"IEPs are subject to numerous procedural and substantive requirements, . . . but they are not required to 'furnish . . . every special service necessary to maximize each handicapped child's potential.'" Grim, 346 F.3d at 379 (internal citations omitted) (quoting Rowley, 458 U.S. at 199). Rather, IEPs are to "provide a 'basic floor of opportunity,' consisting of services that are 'individually designed to provide educational benefit' to a child with a disability." Id. (quoting Rowley, 458 U.S. at 201). "An appropriate public education under IDEA is one that is 'likely to produce progress, not regression.'" Walczak, 142 F.3d at 130 (quoting Cypress-Fairbanks Indep. Sch. Dist. v. Michael F., 118 F.3d 245, 248 (5th Cir. 1997), cert. denied, 522 U.S. 1047 (1998)).

The Court here gives deference to the Impartial Hearing Officer, the only education administrator to review the sufficiency of the IEP. Here, the Court's inquiry is "necessarily prospective in nature," and cannot be guided by M.S.'s progress at Stephen Gaynor School. See J.R. v. Bd. of Educ. of the City of Rye Sch. Dist., 345 F. Supp. 2d at 395. Additionally, because M.S. was never enrolled in one of Plaintiff's public schools, in determining whether M.S. would have made progress under the IEP, the Court is particularly hesitant to substitute its own judgment for that of the Board. See Walczak, 142 F.3d at 130 ("A review of objective evidence is easiest, of course, when a disabled child is in a mainstream class."); see also Grim, 346 F.3d at 381 (cautioning judiciary should give due weight to specialized knowledge and necessary experience of a public school district).

The Court agrees with the Impartial Hearing Officer's assessment that the challenged IEP was reasonable calculated to provide educational benefits to M.S. The IDEA requires that

disabled children be educated in the least restrictive setting as possible. See 20 U.S.C. § 1412(5). The IEP attempted to do that by placing M.S. in a small classroom environment of fifteen students and also giving the child the opportunity to socialize with the entire school population during lunchtime and gym class. Defendant objects to the fact that the IEP would place her child in a seventh grade class, but the recommended Modified Instructional Services I program is for students in grades six through eight. That there were students comprising three grade levels in the recommended placement does not make the IEA inadequate. Walczak, 142 F.3d at 133 (approving IEP that placed student in a classroom with different intellectual, social, and behavioral needs). The IEP also acknowledged and addressed M.S.'s difficulties with language and socialization and provided twice weekly smaller counseling sessions in those two areas. While the Defendant testified to her son's progress at Stephen Gaynor during the challenged school year, "[t]he inadequacy of an IEP is not established . . . simply because parents show that a child makes greater progress in a single area in a different program." Walczak, 142 F.3d at 133. The challenged IEP specifically addressed M.S.'s problems and provided opportunity for educational benefit and progress in the least restrictive environment. While the IEP may not have included all of Defendant's desires for her child, "neither [a court's] sympathy, nor more importantly the IDEA, entitles [a disabled student] to the best education that money can buy, at the expenditure of the [Board's] finite financial resources." J.R. v. Bd. of Educ. of the City of Rye Sch. District, 345 F. Supp. 2d 386, 399 (S.D.N.Y. 2004) (quoting Lunceford v. D.C. Bd. of Educ., 745 F.2d 1577, 1583 (D.C. Cir. 1984) (Ruth Bader Ginsburg, J.)). The Court grants Plaintiff's motion for summary judgment.

### III. Conclusion

For the reasons explained above, the Board of Education's motion for summary judgment is granted, and Defendant W.S.'s motion for summary judgment is denied. The State Review Officer's award of tuition reimbursement to W.S. is reversed. The Clerk of the Court is asked to close the case.

**So Ordered:** New York, New York
July 8, 2005

_____
**Richard Conway Casey, U.S.D.J.**